## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MICHAEL NEAL,                                    )
                                                 )
                        Petitioner,              )
                                                 )
        v.                                       )      Civil Action No. 14-141-GMS
                                                 )
DAVID PIERCE, Warden, and                        )
ATTORNEY GENERAL OF                              )
THE STATE OF DELAWARE,                           )
                                                 )
                        Respondents.             )

---

Edson A. Bostic.  Federal Public Defender's Office, Wilmington, Delaware.  Counsel for petitioner.

Maria T. Knoll, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

## MEMORANDUM OPINION

Feb 24 2017 , 2017
Wilmington, Delaware

Steel, District Judge

Pending before the court is a petition and an amended petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 ("petition") filed by petitioner Michael Neal ("Neal").  (D.I. 1;

D.I. 42)  The State filed an answer in opposition.  (D.I. 9;  D.I. 43)  For the reasons discussed,

the court will deny the petition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. The New Year's Eve Robberies

On December 31, 2008, a group of armed men wearing gloves and disguises robbed three
businesses in Wilmington.  The first business was Cutrona Liquors.  The co-owners,
Ashok and Navin Patel, testified at trial that three men rushed into the store brandishing a
gun.  The men pointed the gun at Ashok and ordered him and his wife into a corner of the
store.  While one member of the gang guarded the door, another emptied cash and
receipts from a box, and the third removed vodka from a display.  The robbers fled the
scene in a white car.  Ashok followed the car and obtained the license plate number,
which he later turned over to the police.

The robbers next visited Dun-Rite Dry Cleaners. Soo Kim, a co-owner, testified that three
men casually entered the store while she attended to a customer.  After the customer left,
the three men rushed toward her with a gun.  Kim fled to the back of the store and called
the police.  Her husband and another employee opened the cash register for the robbers.

The group then descended upon Creative Images Barber Shop. Larry Parks, the owner,
testified at trial that three men entered the store brandishing guns and demanding money,
wallets, and cell phones. The robbers held Parks at gunpoint and pistol whipped two
customers with a gun.

Wilmington Police located and arrested four men in a white Chevrolet Lumina later that
day. Inside the car, officers discovered the spoils of their felonious escapade: a handgun,
masks, liquor bottles, cash, and other items plundered from the stores. Officers eventually
identified the men in the car as Kevin Berry, Robert Brown, Michael Neal, and Kadeem
Reams.

A grand jury indicted Neal on 36 counts related to the New Year's Eve robberies: nine
counts each of First Degree Robbery, Possession of a Firearm During the Commission of
a Felony, and Second Degree Conspiracy.

## B. Neal's Trial

Neal's trial began on August 11, 2009. Prior to trial, the State offered each of the four co-defendants a plea bargain in exchange for his testimony at any of the other co-defendants' trials. Berry, Brown, and Reams accepted their plea offers. Neal did not accept his plea offer and proceeded to trial.

At trial, the State presented 85 exhibits and the testimony of 24 witnesses. The State also planned to present the testimony of Neal's three co-defendants pursuant to the terms of their plea bargains. The State presented Brown's testimony, which implicated Neal as having played a role in the inception, planning, and execution of the robberies. On cross-examination, however, Brown admitted to initially telling the police that Neal had not participated in the robberies. Neal's trial counsel did not request a *Bland* instruction[1] and the trial judge did not *sua sponte* give a *Bland* instruction regarding Brown's testimony.

The State declined to call Berry and Reams when it learned that the two co-defendants had made out-of-court statements tending to exculpate Neal. Berry made the exculpatory statement to his attorney, while Reams spoke directly to the Attorney General and detectives. The State related this information to Neal's trial counsel.

Neal's trial counsel then attempted to call Berry and Reams to testify on [Neal's] behalf. Each of them, however, invoked his Fifth Amendment right against self-incrimination and refused to testify. Berry and Reams feared that if they testified in Neal's defense, they would breach their plea bargains with the State. Without their testimony, Neal's trial counsel sought to admit Berry's and Reams' out-of-court statements under 11 *Del. C.* § 3507. After brief argument on the issue, the trial judge concluded that the statements were not admissible under Section 3507. The trial judge reasoned that Berry and Reams would not be "subject to cross examination" under the statute if they invoked their Fifth Amendment privileges. Neal's lawyer asserted no other basis to admit the statements. Neal called no other witnesses and presented no evidence in his defense. A jury convicted Neal on all 36 counts and the trial judge sentenced him to 54 years incarceration.

*Neal v. State*, 80 A.3d 935, 939-40 (Del. 2013). Neal appealed, and the Delaware Supreme

Court affirmed his convictions. *See Neal v. State*, 3 A.3d 222 (Del. 2010).

In June 2011, Neal filed a motion for post-conviction relief pursuant to Delaware

Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the motion,

and the Delaware Supreme Court affirmed that decision. *See State v. Neal*, 2013 WL 1871755,

---

[1] A jury instruction regarding the credibility of accomplice testimony as described in *Bland v. State*, 263 A.2d 286 (Del. 1970).

at \*12 (Del. Super. Ct. May 1, 2013); *Neal*, 80 A.3d at 952. Neal moved for a rehearing *en banc*, which the Delaware Supreme Court denied. (D.I. 9 at 5)

While represented by a privately retained attorney, Neal timely filed his original habeas petition in February 2014. (D.I. 1) The State filed an answer. (D.I. 9) Thereafter, Neal's attorney passed away, and the Federal Public Defender was appointed in his place. Now represented by the Federal Public Defender, Neal filed a reply brief, (D.I. 27), to which the State filed a sur reply (D.I. 35). After obtaining the court's permission, Neal filed an amended petition. (D.I. 42) The State filed a response, (D.I. 43), and Neal filed a reply (D.I. 45).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell*, 543 U.S. at 451 n. 3; *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is

exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the

---

[2]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

6

clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Neal's timely filed petition and amended petition assert the following five ineffective assistance of counsel claims: (1) defense counsel failed to argue that the exculpatory, out-of-court statements of Berry and Reams were admissible under Delaware Rule of Evidence 804(b)(3); (2) appellate counsel failed to present on direct appeal the argument regarding the admissibility of Berry and Reams' statements; (3) defense counsel failed to request a *Bland* instruction regarding the credibility of Brown's accomplice testimony; (4) appellate counsel failed to raise the *Bland* claim on direct appeal; and (5) defense counsel failed to argue that Reams' out-of-court statement was an admissible statement against penal interest under D.R.E. 804(b)(3) and 11 Del. Code Ann. § 1245(3)(c).  Neal presented claims one, two, three, and four in his Rule 61 motion, and the Superior Court denied them as meritless. *See Neal,* 2013 WL 1871755, at *12.  The Delaware Supreme Court affirmed that decision. *See Neal*, 80 A2d at 952. Therefore, Neal will only be entitled to relief for claims one through four under § 2254(d)(1) if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In claim five, Neal supplements the argument contained in claim one by asserting that defense counsel should have argued Reams' statement fell within the scope of the "statement against interest" exception of D.R.E. 804(b)(3) because Reams subjected himself to criminal liability under 11 Del. Code Ann. § 1245(3)(c) by lying to the authorities.  To the extent this argument should be viewed as essentially the same argument that was raised in claim one, the State contends that the same reasons for denying that claim as meritless also apply to claim five.

7

To the extent the instant argument should be viewed as asserting a new and different ineffective assistance of counsel claim, the State asserts that it is procedurally defaulted because Neal did not present claim five in his Rule 61 proceeding, and any attempt to present it to the Delaware state courts in a new Rule 61 motion would be time-barred under Rule 61(i)(1). In this scenario, the court can only review the merits of claim five if Neal demonstrates cause and prejudice, or a miscarriage of justice.

The court will review Neal's claims *in seriatim*.

**A. Claims One, Two, Three, and Four**

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

8

When denying claims one through four, the Delaware Supreme Court correctly identified *Strickland* as the applicable precedent. *See Neal*, 80 A.3d at 941. As such, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* to the facts of Neal's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Delaware Supreme Court's denial of Neal's ineffective assistance of counsel allegations through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Claims one and two: defense and appellate counsels' failure to present the D.R.E. 804(b)(3) argument

After they accepted their plea agreements, Berry, Reams, and Brown "professed that Neal helped them rob the businesses." *Neal*, 80 A.3d at 949. However, during Neal's trial, Berry and Reams changed their stories and claimed that Neal did not participate in the robberies. *Id.* Neal attempted to have Berry and Reams testify at trial to contradict the State's theory, but both of them invoked their Fifth Amendment right not to testify. *Id.* When Barry and Reams refused to testify, Neal only had their out-of-court statements to counter the State's story. *Id.* Since the statements constituted hearsay, defense counsel asked the trial court to admit the statements under 11 Del. Code Ann. § 3507, while also asserting that no other law or rule would allow the trial court to admit the statements. The trial court denied the request because the State could not cross-examine Berry and Reams. *Id.*

In claim one, Neal contends that defense counsel was ineffective for not arguing that the out-of-court statements of Berry and Reams were admissible under D.R.E. 804(b)(3) because, as

in *Demby v. State*, 695 A.2d 1152 (Del. 1995), there were corroborating circumstances indicating the trustworthiness of the statements. Neal presented this argument in his Rule 61 proceeding, and both the Superior Court and the Delaware Supreme Court held that it was objectively reasonable for defense counsel to refrain from arguing that D.R.E. 804(b)(3) provided a basis for the admission of the out-of-court statements, because *Demby* was inapplicable and the facts indicated that the statements were not trustworthy. In claim two, Neal contends that his appellate counsel should have argued that the out-of-court statements of Berry and Reams were admissible under Rule 804(b)(3) because, once again, as in *Demby*, there were corroborating circumstances indicating the trustworthiness of the statements. The Delaware Supreme Court denied this claim after determining that appellate counsel was not ineffective for failing to raise the issue of the admissibility of these statements on direct appeal.

D.R.E. 804(b)(3) permits the admission of certain hearsay statements that were against the declarant's interests at the time they were made:

> A statement which was, at the time of its making, so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicated the trustworthiness of the statement.

D.R.E. 804(b)(3). In *Demby*, the Delaware Supreme Court explained that the

> corroboration requirement of D.R.E. 804(b)(3) is a preliminary question as to the admissibility of evidence. The trial judge must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination of the weight to be given to such evidence. The corroboration requirement should not be used as a means of usurping jury's function.

*Demby*, 695 A.2d at 1159.

In his Rule 61 affidavit, defense counsel explained that he concluded the evidence could not be admitted under Rule 804(b)(3) because the statements of Reams and Berry were not trustworthy -- both defense counsel and the State believed the statements were only made as a last minute effort to save their friend. (D.I. 11, App. to Appellant's Op. Br. in *Neal v. State*, No. 282,2013, at A44) On post-conviction appeal, the Delaware Supreme Court held that it was objectively reasonable for defense counsel to not argue that the statements were admissible under Rule 804(b)(3), explaining its conclusion as follows:

> Under *Smith* [*v. State*, 647 A.2d 1083, 1088 (Del. 1994)], we first must bifurcate the Statements into their self-inculpatory and non-self-inculpatory components: (1) each declarant reiterated his own involvement in the robberies (self-inculpatory); and (2) each declarant stated that Neal was not involved in the robberies (non-self-inculpatory).
>
> Introducing the self-inculpatory components of the Statements was of little value to Neal's trail counsel, because substantial evidence already supported the conclusion that Berry and Reams had participated in the robberies. Thus, the main advantage to Neal would be for the non-self-inculpatory components of the Statements that tended to exculpate Neal to be admitted. Neal's trial counsel's conclusion that the Statements were not "trustworthy," as the Rule requires, is consistent with our view in *Smith* that "[n]on-self-incriminatory components of a declaration purportedly falling within D.R.E. 804(b)(3) are *presumptively inadmissible* hearsay because they cannot claim any special guarantees of reliability and trustworthiness.

*Neal*, 80 A.3d at 950 (emphasis in original). The Delaware Supreme Court also held that "Neal's reliance on *Demby* is misguided [, because t]he facts here are easily distinguished." *Id.* at 951. Specifically, the Delaware Supreme Court explained when, as here, "there are multiple participants in a crime, an admission by one participant does not automatically negate another's involvement or culpability. The Statements at issue here only maintain an exculpatory effect because of the language that is collateral to the actual self-inculpatory portions." *Id.* at 952.

After reviewing claims one and two in context with the record, the court concludes that the Delaware Supreme Court's decision constituted a reasonable application of *Strickland*. First,

on habeas review, the court defers to the Delaware Supreme Court's interpretation and application of clearly established Delaware precedent as set forth in *Smith* and *Demby*. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Second, given Neal's failure to provide clear and convincing evidence to the contrary, the court also accepts as correct the Delaware Supreme Court's factual determination regarding the inculpatory/exculpatory effect of the statements, and its determination that *Demby* simply did not apply to Neal's case. Third, in his Rule 61 proceeding, the State and defense counsel determined that neither Berry's nor Reams' statements were credible for the following reasons: (1) neither statement comported with the other witness' accounts that there were three actors in the crime who fled in Brown's car after the robbery at the liquor store; (2) neither statement explained why, when the car was stopped by police, Neal was dressed in all black clothing with black gloves and a loaded revolver, with $400 in currency in his possession; (3) neither statement explained why, when stopped by police, Neal was wearing a disguise to hide his face; and (4) the statements do not explain why, in his plea agreement, Reams pled guilty to conspiring with Neal to commit the robberies. (D.I. 11, Affidavit of Trial Counsel at 5; D.I. 11, State's Response to Defendant's Motion for Post-Conviction Relief at 15-16) Since the record does not contain any corroborating evidence demonstrating that Reams and Berry's statements were trustworthy, the court concludes that it was objectively reasonable for defense and appellate counsel to conclude that there were no corroborating circumstances indicating the trustworthiness of the statements.

In addition, given all of the testimonial and circumstantial evidence presented, Neal cannot show a reasonable probability that the outcome of his trial or appeal would have been different but for defense and appellate counsels' failure to make a Rule 804(b)(3) argument

12

regarding the out-of-court statements.  Accordingly, the court will deny claims one and two for failing to satisfy § 2254(d).

### 2. Claims three and four: defense and appellate counsel failed to request a *Bland* instruction regarding the credibility of Brown's accomplice testimony

During the trial, Brown testified that Neal participated in the robberies and carried a black .357 revolver while the codefendants were robbing the businesses.  In claims three and four, Neal contends that defense and appellate counsel were ineffective for respectively failing to request a *Bland* instruction telling the jury to view accomplice testimony with caution and for failing to raise the *Bland* issue on appeal.  On post-conviction appeal, the Delaware Supreme Court held that defense and appellate counsel performed deficiently by failing to request a *Bland* instruction and by failing to raise the *Bland* issue on direct appeal, but that their failure did not prejudice Neal.  The Delaware Supreme Court based this decision on the "overwhelming record evidence that supports the accomplice's testimony," noting that, "even without Brown's testimony, the [overwhelming] evidence [] showed that Neal helped Berry, Reams, and Brown rob the businesses."  *Neal*, 80 A.3d at 946.

The "overwhelming evidence" referenced by the Delaware Supreme Court included the testimony of twenty-three witnesses for the State and eighty-five trial exhibits which corroborated Brown's trial testimony.  *See Neal*, 2013 WL 1871755, at *6.  In addition,

> [t]he State presented money and valuables that the robbers stole and a disguise that a robber wore, all of which the police found near where Neal sat in the Lumina.  For example, Detective Ernest Tolbert identified two brown wallets, assorted cell phones, a Bluetooth headset, cigars, and a bottle of Grey Goose vodka, all stolen.  Further, the State also displayed a revolver, a Black Arminius .357 Magnum, which the police found near the Lumina's passenger-side, front door.  According to witnesses, Neal had this revolver when the police stopped the Lumina, and a robber had a revolver during the crimes.

13

*Neal*, 2013 WL 1871755, at *6. The State also presented testimony that Neal tried to run away from the police after they stopped the car, he pointed a revolver at a police officer, and then he fought with the officer. *Id.* Neal's statement in this proceeding that Brown's "11th hour change of plea and dramatic trial testimony, which recanted his initial statement to the police that Neal was not involved in the robberies, made him the centerpiece of the State's case," (D.I 3 at 23), does not constitute clear and convincing evidence rebutting the Delaware Supreme Court's factual determination that there was overwhelming evidence supporting Brown's testimony that Neal helped Berry, Reams and Brown rob the businesses. Thus, the court accepts the Delaware Supreme Court's factual determination as correct.

Given the overwhelming evidence of Neal's guilt that was independent of Brown's testimony, and after viewing the Delaware Supreme Court's decision through a doubly deferential lens, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that Neal failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for counsels' failure to request (or raise on appeal the issue of failing to request) a *Bland* instruction. Thus, the court will deny claims three and four for failing to satisfy the § 2254(d) standard.

**B.  Claim Five**

In claim five, Neal contends that defense counsel provided ineffective assistance by failing to argue "that an out-of-court statement, by government witness Kadeem Reams, was an admissible 'statement against penal interest' under D.R.E. 804(b)(3) **and** 11 Del. Code Ann. § 1245(3)(c)." (D.I. 37-1)(emphasis added)  Section 1245 provides, in relevant part, that a person is guilty of falsely reporting an incident when he conveys a false report to a law-enforcement officer, and the false report "relat[es] to an actual offense or incident or to the

14

alleged implication of some person therein[.]" 11 Del. Code Ann. § 1245(3)(c). In this case, after originally informing the police that Neal had participated in the robberies, and after he pled guilty, Reams changed his story and told police detectives that Neal had not participated in the robberies. Now, in claim five, Neal asserts that defense counsel was ineffective for failing to argue that Reams' out-of-court statement to police detectives was a statement against penal interest because it exposed Reams to criminal liability under 11 Code Ann. § 1245(3)(c).

The State explains that claim five can be viewed either as asserting essentially the same, but expanded, D.R.E. 804(b)(3) argument as the one contained in claim one and, therefore, is reviewable under § 2254(d), or claim five can be viewed as a new claim which is procedurally defaulted claim and reviewable only if Neal demonstrates cause and prejudice, or a miscarriage of justice. Given the State's position, the court will analyze claim five under both standards.

### 1. Claim five as a supplement to claim one

To the extent Neal's § 1245(3)(c) "statement against interest" argument in claim five merely expands the D.R.E. 804(b)(3) argument in claim one, the court concludes that it must be dismissed for failing to satisfy § 2254(d). Pursuant to D.R.E. 804(b)(3), a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Consequently, even if Reams' second statement exposed him to criminal liability under § 1245(3)(c), that statement would only have been admissible if corroborating circumstances clearly indicated the trustworthiness of the statement. As the court previously explained when discussing claim one and *Demby*, it was objectively reasonable for defense counsel to conclude that there were no corroborating circumstances indicating the trustworthiness of Reams' statement, because Neal has not provided, and the record does not contain, any corroborating

15

evidence demonstrating that Reams' out-of-court statement was trustworthy. *See supra* at 9-10.
In addition, given all of the testimonial and circumstantial evidence presented during the trial,
Neal cannot show a reasonable probability that the outcome of his trial would have been
different but for defense counsel's failure to make a Rule 804(b)(3)/§ 1245(3)(c) argument
regarding Reams' out-of-court statement. Accordingly, to the extent claim five extends or
supplements claim one, the court will deny it for failing to satisfy § 2254(d).

### 2. Claim five as a new claim

To the extent claim five should be treated as an entirely new claim, it is procedurally
defaulted because Neal never presented it to the Delaware Supreme Court on post-conviction
appeal. Neal attempts to establish cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), by blaming
post-conviction counsel for failing to raise this extension of his original Rule 804 ineffective
assistance of counsel argument in his Rule 61 proceeding. In *Martinez*, the Supreme Court held
for the first time that inadequate assistance of counsel during an initial-review state collateral
proceeding may establish cause for a petitioner's procedural default of a claim of ineffective
assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner
must demonstrate that the state post-conviction attorney in his first state collateral proceeding
was ineffective under the standards established in *Strickland*, that the underlying ineffective
assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 9-10, 16-
17. A "substantial" ineffective assistance of trial counsel claim is one that has "some merit"
which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears
to be governed by the standards applicable to certificates of appealability. *Id.* at 12-16.

Here, the court concludes that *Martinez* does not provide a method for establishing cause
for Neal's default of claim five, because the court's conclusion that defense counsel's failure to

raise the Rule 804(b)(3)/§ 1245(3)(c) argument regarding Reams' out-of-court statement does not satisfy either prong of the *Strickland* test precludes Neal from demonstrating that the underlying ineffective assistance of counsel claim is substantial. The court's determination that defense counsel's failure to raise the Rule 804(b)(3)/§ 1245 argument at trial does not satisfy either prong of *Strickland* also precludes Neal from demonstrating that he will suffer prejudice as a result of his default of claim five. Finally, the miscarriage of justice exception to the procedural default doctrine does not excuse Neal's default, because he has not presented new reliable evidence of his actual innocence. For all of these reasons, the court will alternatively deny claim five as procedurally barred from habeas review.

### C.   Stand-Alone Cumulative Error Claim

Finally, Neal contends that habeas relief is warranted because he was prejudiced by the cumulative effect of defense counsel's failure to present the Rule 804(b)(3) argument, the accomplice instruction argument, and the § 1245 false reports argument. (D.I. 27 at 9-10; D.I. 45 at 9-11) A "cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *See Collins v. Sec'y of Pennsylvania Dep't of Corr.,* 742 F.3d 528, 541 (3d Cir. 2014). In this case, Neal defaulted his cumulative error claim because he did not present this argument as a stand-alone claim in his Rule 61 proceeding, and the time to present this claim in the Delaware state courts has passed. Neal's attempt to establish cause under *Martinez* fails for the same reasons previously discussed *See supra* at 16-17. In turn, given the court's conclusion that defense counsel's failure to raise each of these arguments separately does not satisfy the *Strickland* standard, there are no errors to aggregate, meaning that Neal cannot demonstrate prejudice. Thus, the court will deny Neal's cumulative error claim as procedurally barred from habeas review.

17

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Neal's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, Neal's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.

18